MILLER *v.* CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS—NEGLIGENCE—STATUTES CONSTRUED —STREETS.

A municipal corporation is not liable, within the provisions of 1 Comp. Laws, §§ 3441–3443, for injuries sustained by a person using the sidewalk, caused by the falling of a dead limb from a tree in the highway.

2. SAME—DEFECTS IN HIGHWAY.

The duty under 1 Comp. Laws, §§ 3441–3443, to keep the highways, streets, and sidewalks in reasonable repair, refers only to the traveled way, and does not impose upon a city an obligation to trim trees growing between the sidewalk and curb in a public street.

3. SAME—ORDINANCES.

An ordinance of the city of Detroit, forbidding other persons than owners or occupants of adjacent lots from injuring or defacing trees, does not enlarge the obligation of the municipality to trim trees.

4. SAME—CHARTER.
   No duty to remove such dead limbs is imposed by the charter of the city of Detroit. Act No. 326, Local Acts 1883, chap. 7, § 34, as amended by Act No. 459, Local Acts 1889.

5. EVIDENCE—JUDICIAL NOTICE—TREES SHEDDING LIMBS.
   Judicial notice will be taken of the fact that trees annually shed limbs.

6. STATUTORY CONSTRUCTION — PRESUMPTION AS TO LEGISLATIVE INTENT.
   Statutes in derogation of the common law must be strictly construed; and the legislature will not be presumed to have intended an alteration in the common law where such an intent is not expressed.

Error to Wayne; Murphy, J. Submitted October 15, 1908. (Docket No. 82.) Decided May 26, 1909.

Case by John R. Miller against the city of Detroit for personal injuries. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Affirmed.

*Samuel E. Jones,* for appellant.

*Edmund Atkinson* (*P. J. M. Hally,* of counsel), for appellee.

HOOKER, J. The admitted facts in this cause are that the plaintiff, while walking upon a sidewalk in the city of Detroit, was struck and injured by a dead limb, which fell from a tree over his head. The tree was growing in the public street, between the sidewalk and the curb, and it was admitted by counsel that the limb was 5 inches thick and 15 feet long, and that it had been dead four years. The plaintiff brought this action for damages, alleging negligence. The learned circuit judge directed a verdict for the defendant, and the plaintiff has appealed.

The statutes upon which plaintiff's right to recover must depend are 1 Comp. Laws, §§ 3441–3443. We quote them:

"*The People of the State of Michigan enact:* That any

person or persons sustaining bodily injury upon any of the public highways or streets in this State, by reason of neglect to keep such public highways or streets, and all bridges, sidewalks, cross-walks and culverts on the same in reasonable repair, and in condition reasonably safe and fit for travel by the township, village, city or corporation whose corporate authority extends over such public highway, street, bridge, sidewalk, cross-walk or culvert, and whose duty it is to keep the same in reasonable repair, such township, village, city or corporation shall be liable to and shall pay to the person or persons so injured or disabled just damages, to be recovered in an action of trespass on the case before any court of competent jurisdiction.

" If any horse or other animal, any cart, carriage or vehicle, or other property, shall receive any injury or damage by reason of neglect by any township, village, city or corporation, to keep in repair any public highway, street, bridge, sidewalk, cross-walk or culvert, the township, village, city or corporation whose duty it is to keep such public highway, street, bridge, sidewalk, cross-walk or culvert in repair shall be liable to and shall pay the owner thereof just damages, which may be recovered in an action of trespass on the case before any court of common jurisdiction: *Provided,* That in all actions brought under this act it must be shown that such township, village, or city has had reasonable time and opportunity after knowledge by or notice to such township, village or city that such highways, streets, bridges, sidewalks, cross-walk or culvert have become unsafe, or unfit for travel to put the same in the proper condition for use, and has not used reasonable diligence therein after such knowledge or notice.

" It is hereby made the duty of townships, villages, cities, or corporations to keep in reasonable repair, so that they shall be reasonably safe and convenient for public travel, all public highways, streets, bridges, sidewalks, cross-walks and culverts that are within their jurisdiction, and under their care and control and which are open to public travel, and when the means now provided by law are not sufficient to enable any township, village or city to keep its public highways, streets, bridges, sidewalks, cross-walks and culverts in good repair such township, village or city is hereby authorized to levy such additional sum upon the taxable property of such township, village or city not exceeding five mills on the dollar, in any one year, as

will enable such township, village or city to keep its public highways, streets, bridges, sidewalks, cross-walks, and culverts in good repair at all times.  Highway commissioners, street commissioners, and all other officers having special charge of highways, streets, bridges, sidewalks, cross-walks, and culverts, and the care or repairing thereof are hereby made and declared to be the officers of the township, village, city, or corporation wherein they are elected or appointed, and shall be subject to the general direction of such township, village, city or corporate authorities in the discharge of their several duties.''

The title of this act is:

"An act to provide for the recovery of damages for injuries caused or sustained by reason of defective public highways, streets, bridges, sidewalks, cross-walks, or culverts."

Section 50, subd. 1, 1 Comp. Laws, contains the provision:

"All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning."

Certainly it would not be the common understanding from this title that the presence of a dead limb of a tree within the limits of, or overhanging from private premises, a public highway, is such a defect in the highway as to be within the intention of the legislature in its requirement to maintain and repair streets, bridges, sidewalks, cross-walks, and culverts, and to respond in damages.  If we look at the sections themselves, we shall find that they do not give a right of recovery for all injuries, but only such as are sustained by reason of neglect to keep the ways in repair and in condition reasonably safe and fit for travel —not to maintain a highway where the traveler shall be safe.  The duty imposed is to keep ways in reasonable repair, so that they (the ways) may be reasonably safe and convenient for public travel, a stating of the purpose

or reason for the requirements made, not an enlargement of them. Evidently this statute was to require the local maintenance of the State's highways in a reasonably good and safe condition, and the payment of damages due to accidents caused by a failure to do these things required by statute, and not for accidents due to extraneous or other causes, or neglect. There is no legitimate inference that the traveler was to be protected from the inconveniences and dangers from snow and sleet and ice, nor that the legislature supposed it was imposing upon the local constituencies the burden of protecting travelers, at an expense of millions of dollars annually, against accidents, so rare that we have no judicial record of a similar accident in this State. Who can doubt that, had our highway officers attempted to expend public money in the inspection and trimming of trees, in conformity to plaintiff's contention regarding the meaning of this statute, the townships and villages would have protested against so unjust an extension of the law relating to torts. The requirement, if made, would have been burdensome in proportion to its benefits. There is a strong presumption in favor of a construction which will not work injustice. *Osborn* v. *Charlevoix Circuit Judge*, 114 Mich. 655, 660; 26 Am. & Eng. Enc. Law (2d Ed.), p. 646.

We may take judicial notice that many trees annually shed large numbers of dead limbs. Usually they are small in proportion to the limb in this case, but many are large enough to seriously injure a person upon whom they should fall. They are all within this rule contended for; and never in the history of the country has there been an attempt to compel municipalities or private persons to assume the dangerous and expensive burden of anticipating and performing the function, so well and so far so safely performed by nature, of maintaining a living tree in a safe condition. There is nothing in this statute that imposes a duty as to trees, nor is there any reason for saying that the ordinances cited impose a liability. These ordinances undertake to punish the injury or cutting of

trees standing in the street by any person other than adjoining proprietors. Nor does defendant's charter, which gives the city power to direct and regulate the planting, and to provide for the preservation of ornamental trees, impose any such duty or liability as those contended for. We have held that this statute imposes a duty to remove some kinds of dangerous obstructions from a highway, after notice, but this is upon the theory that they constitute defects in the surface of the roadway itself, and upon no other theory, and this has been held not to include a duty to protect against such temporary obstructions as are due to natural causes. *McKellar* v. *City of Detroit,* 57 Mich. 158; *McArthur* v. *City of Saginaw,* 58 Mich. 357; *Kannenberg* v. *City of Alpena,* 96 Mich. 53; *Gavett* v. *City of Jackson,* 109 Mich. 408 (32 L. R. A. 861); *McEvoy* v. *City of Sault Ste. Marie,* 136 Mich. 172; *Thompson* v. *West Bay City,* 137 Mich. 94.

Another reason forbidding the construction urged is that the language of the statute clearly indicates that it is to the physical highway that it refers in its method of construction, maintenance, defects, and repair. This is indicated, not only by the general words, which, as already stated, should be understood to mean no more, and the rule that "a statutory liability, created in derogation of the common law cannot be enlarged by construction (see *City of Detroit* v. *Putnam,* 45 Mich. 263; *Keyes* v. *Village of Marcellus,* 50 Mich. 439; *Williams* v. *City of Grand Rapids,* 59 Mich. 51; *O'Leary* v. *Board of Fire & Water Com'rs of Marquette,* 79 Mich. 281 [7 L. R. A. 170]), but also by the mention of various specific portions of the way, such as sidewalks, culverts and bridges, which tend to limit the word "street." The case of *City of Detroit* v. *Putnam,* supra, is in point. This statute as originally passed (Act No. 244, Pub. Acts 1879, 1 How. Stat. § 1442) was practically identical with its present provisions, except that the word "sidewalks" was not included. In the case cited it was held that there was no liability for accidents caused by a

defective sidewalk, and the substantial change made by the present statute was the insertion of that word. Doubtless the decision cited was the occasion for the amendment. The court said:

" We have but little doubt that, if the liability had been created for injuries sustained in consequence of a failure to keep in repair the highways and streets, these terms would have included all within the limits of the line thereof, and thus the sidewalks, as well as the bridges, cross-walks and culverts. The special terms used do not enlarge, but limit, the force of the general words used. In village and city charters express provisions relating to sidewalks will always be found, and the omission of such in this act is very significant.

"As already said, the city would not be liable in the absence of this statute, which creates the liability, and we cannot by construction enlarge the liability. Where a statute attempts, in derogation of the common law, to create a liability, we cannot go beyond the clearly-expressed provisions of the act. Such statutes are not to be extended or enlarged in their scope by construction."

Such a construction would not have been possible if the plaintiff's contention is correct, and the court would have been obliged to hold that the general language was broad enough to include sidewalks and all other portions of the highway.

This is a statute in derogation of the common law, as we have said. That it must be strictly construed for that reason is shown by many cases in our reports. The liability contended for must rest on implication, and in this connection the case of *Bandfield* v. *Bandfield*, 117 Mich. 82 (40 L. R. A. 757), has application. We there said:

"No such right is conferred by our statute, unless it be by implication. The legislature should speak in no uncertain manner when it seeks to abrogate the plain and long-established rules of the common law. Courts should not be left to construction to sustain such bold innovations. The rule is thus stated in 9 Bac. Abr. tit. " Statute," I (4), 245:

" 'In all doubtful matters, and where the expression is in general

terms, statutes are to receive such a construction as may be agree-able to the rules of the common law in cases of that nature; for statutes are not presumed to make any alteration in the common law farther or otherwise than the act expressly declares. There-fore in all general matters the law presumes the act did not intend to make any alteration; for, if the parliament had had that design, they would have expressed it in the act.'"

But one case—*McGarey* v. *City of New York*, 89 App. Div. (N. Y.) 500, has been cited where a recovery was sought upon a similar injury, and that was not a decision of a court of last resort, and was made by a bare majority of the judges who sat. Moreover, it was in a State that recognized a common-law right of recovery of private damages whenever a duty was imposed upon a municipal corporation, a rule which does not obtain in this State.

*Hill* v. *City of Boston*, 122 Mass. 344, contains an elaborate discussion of the question, and a review of the American cases which is summed up in the following language:

"There is no case in which the neglect of a duty, imposed by general law upon all cities and towns alike, has been held to sustain an action by a person injured thereby against a city, when it would not against a town. The only decisions of the State courts, in which the mere grant by the legislature of a city charter, authorizing and requiring the city to perform certain duties, has been held sufficient to render the city liable to a private action for neglect in their performance, when a town would not be so liable, are in New York since 1850, and in Illinois. The cases in the Supreme Court of the United States in which private actions have been sustained against a city for neglect of a duty imposed upon it by law are of two classes: (1) Those which arose under the peculiar terms of special charters, in the District of Columbia, as in *Weightman* v. *City of Washington*, 1 Black, 39, and *Barnes* v. *District of Columbia*, 91 U. S. 540, or in a territory of the United States, as in *Nebraska City* v. *Campbell*, 2 Black, 590. (2) Those which, as in *Mayor, etc., of New York* v. *Sheffield*, 4 Wall. 189, and *Chicago City* v. *Robbins*, 2 Black, 418, arose in New York or in Illinois, and in which the general liability of the city was not denied or even discussed, and apparently

could not have been, consistently with the rule by which the Supreme Court of the United States, upon questions of the construction and effect of the Constitution and statutes of a State, follows the latest decisions of the highest court of that State, even if like words have been differently construed in other States. * * * In the absence of such binding decisions, we find it difficult to reconcile the view, that the mere acceptance of a municipal charter is to be considered as conferring such a benefit upon the corporation as will render it liable to private action for neglect of the duties thereby imposed upon it, with the doctrine that the purpose of the creation of municipal corporations by the State is to exercise a part of its powers of government—a doctrine universally recognized, and which has nowhere been more strongly asserted than by the Supreme Court of the United States. * * *

"But, however it may be where the duty in question is imposed by the charter itself, the examination of the authorities confirms us in the conclusion that a duty which is imposed upon an incorporated city, not by the terms of its charter, nor for the profit of the corporation, pecuniarily or otherwise, but upon the city as the representative and agent of the public, and for the public benefit, and by a general law applicable to all cities and towns in the commonwealth, and a breach of which in the case of a town would give no right of private action, is a duty owing to the public alone; and a breach thereof by a city, as by a town, is to be redressed by prosecution in behalf of the public, and will not support an action by an individual, even if he sustains special damage thereby."

See, also, 2 Dillon on Municipal Corporations (4th Ed.), § 997, et seq.

It is undeniable that many of the State courts make a distinction between municipal corporations proper and quasi municipal corporations, implying liability on the part of the former when a public duty is imposed, while such liability is not implied against the latter. New York is one of these States. That this is illogical is shown by the cases of *Hill* v. *City of Boston*, supra, and *City of Detroit* v. *Blackeby*, 21 Mich. 84, and is stated to be so by Mr. Dillon. 2 Dillon on Municipal Corporations,

(4th Ed.), §§ 1022–1024.   This subject is alluded to here, to emphasize the fact, which appears to be conceded, that the plaintiff's claim in this case must vest on a statute in derogation of the common law, and for the further purpose of calling attention to the fact that the only similar case to the present one ( *McGarey* v. *City of New York,* 89 App. Div. [N. Y.] 500), cited by counsel is based on an entirely different view of the common law, as is also the case of *Danaher* v. *City of Brooklyn,* 119 N. Y. 241 (7 L. R. A. 592), cited therein, and therefore those cases are not authority in this State, being fundamentally opposed to the established principles here.   There is much danger in following precedents from other States without taking note of the differences in conditions underlying them. We have heretofore said that many departures from sound principles can be traced to such cause.

The learned circuit judge did not err in his interpretation of this statute, and his judgment should be affirmed.

BLAIR, C. J., and GRANT, MONTGOMERY, OSTRANDER, MOORE, McALVAY, and BROOKE, JJ., concurred.