### DAUGHERTY v. WICKES CORPORATION.

1. INSURANCE—ANNUITY—PROFIT-SHARING PLAN.

Profit-sharing plan which includes a provision that makes benefits payable upon termination of employment, unrelated to death or retirement, does not resemble a contract of life insurance, endowment, or annuity upon the life of the employee participating.

2. SAME—PROFIT-SHARING PLAN.

Profit-sharing plan of decedent's employer which made benefits payable upon termination of employment, unrelated to death or retirement, is not within insurance statutes.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur, Insurance §§ 17, 18; 35 Am Jur, Master and Servant §§ 62, 64, 71, 116.
[3] 26 Am Jur, Husband and Wife § 4; 29A Am Jur, Insurance § 1642; 50 Am Jur, Statutes §§ 345, 346.
[4] 29 Am Jur, Insurance §§ 17, 18; 29A Am Jur, Insurance § 1642; 35 Am Jur, Master and Servant § 116.
[5, 11] 29A Am Jur, Insurance § 1642.
[6] 24 Am Jur 2d, Divorce and Separation § 504; 25 Am Jur 2d, Dower and Curtesy §§ 134, 141.
[7] 24 Am Jur 2d, Divorce and Separation §§ 879, 904; 35 Am Jur, Master and Servant § 116.
[8] 24 Am Jur 2d, Divorce and Separation § 904; 29A Am Jur, Insurance § 1642; 35 Am Jur, Master and Servant § 116.
[9, 10] 26 Am Jur, Husband and Wife § 4; 29A Am Jur, Insurance § 1642.
[12] 35 Am Jur, Master and Servant §§ 116, 119.

3. STATUTES—INSURANCE POLICY—DIVORCE—DEROGATION OF COMMON LAW—STRICT CONSTRUCTION.

Statute providing that upon divorce of husband and wife, unless otherwise ordered in divorce decree, any policy or contract of life insurance, endowment or annuity upon the life of the husband shall become payable to the estate of the husband or to such named beneficiary as he shall affirmatively designate is in derogation of the common law and is to be strictly construed (CL 1948, § 552.101).

4. INSURANCE—PROFIT-SHARING PLAN—DIVORCE—RIGHTS OF PARTIES.

Deferred profit-sharing plan of decedent's employer is not "life insurance, endowment, or annuity upon the life of the husband" within the meaning of statute which provides that upon divorce, the proceeds of any policy or contract of life insurance, endowment, or annuity upon the life of the husband shall become payable to the estate of the husband or to such named beneficiary as he shall affirmatively designate, unless the decree of divorce provides otherwise (CL 1948, § 552.101).

5. JUDGMENT—ESTOPPEL—DIVORCE—PROFIT-SHARING PLAN.

Neither the provision of divorce decree barring dower of the wife nor provision relating to insurance or retirement estopped wife from claiming proceeds of deferred profit-sharing plan after husband's death, where decree authorized him to change the beneficiary in such plan but his designation in it of her was never changed.

6. SAME—RES JUDICATA—DIVORCE—PROFIT-SHARING PLAN.

Divorce decree provision barring dower of wife *held*, not *res judicata* of her claim as beneficiary in deferred profit-sharing plan offered by former husband's employer in which he had made no change in beneficiary after the divorce before he died.

7. DIVORCE—PROFIT-SHARING PLAN.

Husband, now deceased, was vested with complete ownership of his participation in profit-sharing plan of his employer and his former wife was divested of any claim upon it by a provision of a divorce decree concerning proceeds of retirement contract.

8. SAME—PROFIT-SHARING PLAN—DESIGNATION OF BENEFICIARY.

Deceased husband, who left his former wife as named beneficiary of his profit-sharing plan with his employer after decree of divorce divested her of any claim upon the plan by its provision concerning proceeds of retirement contract, *held*, to have given the proceeds of the profit-sharing plan to his former wife by doing nothing to change her designation as beneficiary.

9. STATUTES—INSURANCE POLICY—DIVORCE.

Statute providing that upon divorce of husband and wife, unless otherwise ordered in divorce decree, any policy or contract of life insurance, endowment, or annuity upon the life of the husband shall become payable to the estate of the husband or to such named beneficiary as he shall affirmatively designate was enacted to change the result of judicial decisions which held that a divorced wife was entitled to life insurance proceeds where she remained the named beneficiary of insurance policies on her former husband's life (CL 1948, § 552.101).

10. INSURANCE—BENEFICIARY—DIVORCED SPOUSE.

A divorced spouse who is the named beneficiary of a life insurance contract takes the insurance proceeds notwithstanding the divorce, absent a change in beneficiary executed substantially in accordance with the provision of the insurance contract, in those life insurance cases to which the 1939 statute, providing that such a policy shall be payable to the estate of the husband or to such named beneficiary as he shall affirmatively designate, does not apply (CL 1948, § 552.101).

11. SAME—DESIGNATION OF BENEFICIARY—WIFE—DESCRIPTION.

Use of the word "wife" in the designation of a beneficiary of a life insurance policy is descriptive only, unless the context clearly indicates otherwise, so that termination of the beneficiary's status as wife does not destroy her right to receive the insurance proceeds, absent a statute on the subject.

12. CONTRACTS—PROFIT-SHARING PLAN—CHANGE OF BENEFICIARY.

Change of beneficiary can be accomplished only by procedures which are in substantial compliance with the provisions of a written profit-sharing plan which provides for a change of beneficiaries, where the participant in the plan is free to change the beneficiary.

Appeal from Saginaw; Borchard (Fred J.), J. Submitted Division 3 June 7, 1967, at Lansing. (Docket No. 3,028.)   Decided December 8, 1967. Leave to appeal denied March 6, 1968.  See 380 Mich 761.

Complaint by Henrietta Daugherty, special administratrix of the estate of Emil Julius Hildebrandt, deceased, against The Wickes Corporation, a Michi-

gan corporation; Union Mutual Life Insurance Company, a foreign corporation; and Mary Ann Hildebrandt, presently known as Mary Ann Skimson, for court order which would require the paying of the proceeds of the life insurance policy on the life of deceased and the paying of the proceeds of the deceased's deferred profit-sharing plan into the estate of the deceased. Judgment for plaintiff. Defendant Mary Ann Skimson appeals. Reversed in part and remanded.

*Egloff, Mainolfi, Taylor, McGraw & Collison,* for plaintiff.

*Doozan, Scorsone & Trogan,* for defendant.

BAUM, J. Emil Hildebrandt died in 1965, some 2-1/2 years after being divorced. Henrietta Daugherty, his sister, was appointed administratrix of his estate. This lawsuit is a dispute between the administratrix and Mary Ann Skimson, the divorced wife of Emil Hildebrandt. The dispute originally concerned the proceeds of a group life insurance policy as well as the proceeds of a deferred profit-sharing plan, both of which the deceased had acquired through an arrangement offered by his employer, The Wickes Corporation. Union Mutual Life Insurance Company, the remaining defendant, is the insurer under the group life insurance policy. As mere stakeholders in the controversy, Wickes and Union Mutual are willing to pay the insurance and profit-sharing proceeds to the person designated by the court.

The court below, in a case tried without a jury, awarded both the group life insurance proceeds in the approximate amount of $8,000 and the profit-sharing benefits in the approximate amount of $13,-000 to the administratrix.

Appellant, Mary Ann Skimson, now concedes that the trial judge was correct in awarding the insurance proceeds to the administratrix. Appellant agrees that this result was required by PA 1939, No 220, § 1.[1] (CL 1948, § 552.101 [Stat Ann 1957 Rev § 25-.131]). The appellant contends, however, that the trial judge erred in awarding the profit-sharing benefits to the administratrix.

Emil Hildebrandt named Mary Ann Skimson (then Mary Ann Hildebrandt) the beneficiary of his insurance and profit-sharing benefits in 1961. She was then his wife. They were divorced about a year later.

The bill of complaint for divorce filed by the then Mary Ann Hildebrandt contained the following allegation:

"that the defendant in his own name owns   *   *   * stocks in the Wickes Boiler Company."

The profit-sharing plan consisted largely of such stock. Her complaint prayed, *inter alia,* "that the court may decree a property settlement and award to the plaintiff such property as the court deems just and equitable."

The divorce suit was uncontested, and the final decree of divorce provided as follows:

"PROPERTY SETTLEMENT.

"It is further ORDERED, ADJUDGED and DECREED that the title to any property of the parties   *   *   *

---

[1] The 1939 statute provides:

"Hereafter every decree of divorce shall determine all rights of the wife in and to the proceeds of any policy or contract of life insurance, endowment or annuity, upon the life of the husband in which she was named or designated as beneficiary, or to which she became entitled by assignment or change of beneficiary during the marriage or in anticipation thereof, whether such contract or policy was heretofore or shall hereafter be written or become effective, and unless otherwise ordered in said decree such policy or contract shall thereupon become and be payable to the estate of the husband or to such named beneficiary as he shall affirmatively designate."

which is not herein specifically mentioned shall vest absolutely in either of the parties to this cause now having possession of the same and control thereof.

"It is further ORDERED, ADJUDGED and DECREED that the Defendant, EMIL J. HILDEBRANDT, shall pay to the plaintiff, MARY ANN HILDEBRANDT, the sum of $1 and that this provision shall be in lieu of her dower in the lands of her husband, and that he shall hereafter hold his remaining lands free, clear and discharged from any such dower right or claim and said provision shall be in full satisfaction of all claims that she has or may have in any property which he owns or may hereafter own, or which he has or may hereafter have any interest.

"STATUTORY INSURANCE CLAUSE.

"It is further ORDERED, ADJUDGED and DECREED, that neither the plaintiff, MARY ANN HILDEBRANDT, nor the defendant, EMIL J. HILDEBRANDT, shall hereafter have any right, title or interest to the proceeds of any policy or contract of life insurance, retirement or annuity upon the life of the other, in which either was heretofore named or designated as beneficiary, or in which either became entitled by assignment or change of beneficiary during the marriage or in anticipation thereof, and that either of them shall be at liberty to change the beneficiary on any policy or contract of life insurance, retirement or annuity upon their respective lives or otherwise deal with or dispose of the same without the consent or permission of the other."

Despite the dissolution of the marriage in 1962, Emil Hildebrandt did not change the provisions making Mary Ann the beneficiary of his group life insurance and profit-sharing plan. Thus Mary Ann was the last designated beneficiary of the profit-sharing plan at the time of Emil Hildebrandt's death.

The appellant contends that the trial judge erred in applying the 1939 statute to the profit-sharing plan and that under the case law of Michigan the

proceeds of the plan should be awarded to Mary Ann Skimson as the last designated beneficiary.

The appellee offers two arguments for affirmance. First, appellee contends that an award of profit-sharing plan benefits to Hildebrandt's estate is required by the 1939 statute. Second, appellee argues that Mary Ann is estopped from claiming the proceeds of the profit-sharing plan by the dower provisions of the divorce decree and by those provisions of the decree concerning proceeds of retirement.

We are constrained by our understanding of the precedents to agree with appellant.

To begin with, the 1939 statute does not apply. This is a statute which pertains to "life insurance, endowments or annuity upon the life of the husband." The profit-sharing plan in question is none of these. The deferred profit-sharing plan was offered by The Wickes Corporation to its employees separate and distinct from a group life insurance plan. Included in the profit-sharing plan is a provision which makes benefits payable upon termination of employment, unrelated to death or retirement. Thus upon quitting or being fired an employee is entitled to the benefits of the profit-sharing plan. This feature deprives the plan of any resemblance to "life insurance" or "endowment or annuity upon the life of the husband."[2]

Our conclusion is reinforced by an examination of the insurance code of 1956, CLS 1961, §§ 500.100 through 500.8302 (Stat Ann 1957 Rev §§ 24.1100 through 24.18302). The profit-sharing plan is not within this statute.

The 1939 statute was in derogation of the common law and is to be strictly construed, *Miller* v. *City of Detroit* (1909), 156 Mich 630. The deferred profit-

---

[2] See the definitions of life insurance, endowment and annuity in Couch on Insurance (Anderson ed, 1959), § 1:18, p 44, § 1:43, p 61, § 1:68, p 79.

sharing plan is not "life insurance, endowment or annuity upon the life of the husband" within the meaning of the statute.

We turn to the appellee's next argument, that the divorce decree was *res judicata* of Mary Ann Skimson's claim. Does the language in the divorce decree, which relates to dower or to retirement, estop Mary Ann Skimson from claiming the proceeds of Emil Hildebrandt's profit-sharing plan? We think not.

The divorce decree contains an express reference to "proceeds of any  *  *  * contract of  *  *  * retirement." The appellee claims that this clause reaches the profit-sharing plan. Conceding the correctness of appellee's claim, the dower clause cannot, also, be fairly held to apply to the profit-sharing plan. Taking into account all of the provisions of the decree which relate to property, there is no basis for construing the provision in lieu of dower as applicable to the benefits of the profit-sharing plan. Moreover, as pointed out later, even if the dower clause applies to the profit-sharing plan, the result would not be different.

We agree with appellee that the profit-sharing plan can be considered "proceeds of any  *  *  * contract of  *  *  * retirement" within the meaning of the divorce decree. Even so, the appellant is entitled to the proceeds of the profit-sharing plan. The provision of the divorce decree concerning proceeds of retirement simply vested Emil Hildebrandt with complete ownership of the profit-sharing plan and divested his then wife of any claim upon it. The divorce decree expressly stated that each party was "at liberty to change the beneficiary on any  *  *  * contract of  *  *  * retirement  *  *  * or otherwise deal with or dispose of the same without the consent or permission of the other."

Another provision of the decree, covering property not specifically mentioned, had a like effect. It

simply vested such property absolutely in the spouse
having possession and control of it. Similarly, even
if the dower provision were applicable to the profit-
sharing plan, its effect would simply be to vest in
Emil Hildebrandt all rights to the profit-sharing
plan free and clear of the claims of Mary Ann.

Thus the profit-sharing plan became Emil Hilde-
brandt's property to do with as he pleased. He could
have changed beneficiaries free and clear of any
claim by his former spouse. However, the decree
left him free to give his profit-sharing benefits to
Mary Ann if he so desired. The point is that he
took no step to give his profit-sharing benefits to
anyone else. We agree that pursuant to the divorce
decree, the profit-sharing plan became Hildebrandt's
sole property. The issue is what did he do with this
property after the divorce.

Notice for a moment the effect of the appellee's
estoppel or *res judicata* argument upon a man who
wants his divorced wife to have the benefits of his
profit-sharing plan. Should a divorce decree like
the one before us have the effect of frustrating such
an intention? Of course not. How, then, would he
accomplish such an objective after divorce? Should
our judge-made law require that the divorced man
execute a new beneficiary provision keeping his for-
mer wife as the named beneficiary? One can hardly
think of anything more offensive to common sense
than a requirement that he must execute another
beneficiary provision in order to retain the same
beneficiary.

We conclude that the language of the divorce de-
cree neither prevented Hildebrandt from leaving
the benefits of the profit-sharing plan to Mary Ann
nor required him to execute a new beneficiary clause
in order to do so.

The profit-sharing plan contained provisions for
changing beneficiaries. Hildebrandt had plenty of

time after the divorce in which to do so.  He well
knew how, having changed beneficiaries many times
before in his life.  We see nothing in the statutes,
in the divorce decree, or in his conduct to overcome
the clear, written direction he gave his employer in
1961 that upon his death, Mary Ann should have
his profit-sharing benefits.  By doing nothing after
the divorce, Hildebrandt gave the proceeds of his
profit-sharing plan to Mary Ann.  This conclusion is
in line with Michigan Supreme Court decisions,
which we turn to next.

The provision in the divorce statutes concerning
life insurance, endowment, or annuity was added to
our laws by an amendment enacted in 1939.  It
was enacted to change the result of a long line of
judicial decisions which held that a divorced wife
was entitled to life insurance proceeds where she
remained the named beneficiary.

Since the statute does not apply, we are left to
decide this case under the authorities established
by judicial decision.  No cases precisely in point
have been called to our attention by counsel; nor has
our own research turned up any cases dealing with
a profit-sharing plan having the features of this
one.  However, the tripartite, contractual nature
of the instant profit-sharing plan is so much like a
life insurance contract that insurance cases decided
under the common law are applicable by analogy.

In those life insurance cases to which the 1939
statute does not apply, the Michigan Supreme Court
has held, without deviation, that absent a change in
beneficiary, executed substantially in accordance
with the provisions of the insurance contract, a di-
vorced spouse who is the named beneficiary takes
the insurance proceeds notwithstanding the divorce.
Further, the Court has held that use of the word
"wife" in the beneficiary designation is descriptive
only, unless the context clearly indicates otherwise,

so that termination of the beneficiary's status as wife does not destroy her right to insurance proceeds. *Ladies' Auxiliary of Ancient Order of Hibernians* v. *Flanigan* (1916), 190 Mich 675; *Ancient Order of Hibernians* v. *Mahon* (1922), 221 Mich 213; *Guarantee Fund Life Association* v. *Willet* (1927), 241 Mich 132; *Hudson* v. *Hudson* (1961), 363 Mich 23.

Appellee argues that in these cases there is evidence that the insured actually intended that his spouse should remain the beneficiary after the divorce. While we don't read these cases as resting upon any such intention, there is no shortage of evidence that Emil Hildebrandt actually intended that Mary Ann should remain the beneficiary of his profit-sharing plan after the divorce.

One such indication is his failure to change beneficiaries. Many times in the past he had changed beneficiaries. He had even, once before, removed a divorced wife as beneficiary. The undisputed evidence shows that Hildebrandt changed the beneficiary of his profit-sharing plan from his mother to his first wife, Linda, in 1957. In 1958, after divorcing his first wife, Linda, he changed the beneficiary of his life insurance from Linda to his sister, Henrietta Daugherty. In the same year he substituted his sister for his divorced first wife as a beneficiary of his profit-sharing plan. In 1960 he changed his profit-sharing plan beneficiary from his sister to his mother. Finally in 1961 he changed the beneficiary provisions of his insurance and profit-sharing plan so as to name his second wife, Mary Ann. When such a sophisticated and inveterate changer of beneficiaries makes no change, his conduct is more apt to be consistent with his actual intent than with procrastination or any other explanation.

Moreover, Emil Hildebrandt did not contest Mary Ann's allegations that he was entirely at fault in the demise of the short-lived marriage by reason of his

excessive drinking and abusive conduct. During the marriage he had lived in her home, rent free. Mary Ann had worked throughout the marriage. She received no alimony. The only property of his which she got was $1 in lieu of dower. Under all the circumstances, his failure to change beneficiaries after the divorce is completely consistent with a desire on his part to make amends to his former wife.

While such considerations, concerning what may have been in Hildebrant's mind, suggest that our decision does no violence to his inner intention, our decision does not rest on any speculation concerning such inner or unexpressed intention. Our decision rests by analogy on the authorities above, which, as we read them, render irrelevant any such inner intention of the insured if it is not reflected in a change of beneficiary executed substantially in accordance with the requirements of the insurance contract.

The cases cited by the appellee are inapposite. Our case is not like *Morris* v. *Protected Home Circle of Sharon, Pa.* (1928), 243 Mich 542, wherein, to be eligible as beneficiary, a person must, by statute and by the insurance contract, be the wife of the insured. Nor is our case one in which the insured lost the right to change the beneficiary as did the settlor in *MacDonald* v. *Conservative Life Insurance Company of Wheeling, West Virginia* (1940), 292 Mich 182. The case of *Ester* v. *Prudential Insurance Company of America* (1941), 298 Mich 330, did not involve divorce, and in any event the life insurance proceeds were awarded to the last-designated beneficiary despite the fact that the insured's relationship with her had terminated long before his death. In *Chrysler Corporation* v. *Hardwick* (1941), 299 Mich 696, quite unlike the instant case, it was not entirely clear which of two Daisy Hannahs the insured had in mind as his last-designated beneficiary. In *Lansing* v. *Haynes* (1893), 95 Mich 16, it was held that a di-

vorce, in which a property settlement had been made while the divorce suit was pending, had the effect of revoking a pre-existing will. This holding was in accord with the majority view then prevailing. Leach, Cases on Wills (2d ed, 1947), p 111; 2 Page on Wills (Bowe-Parker Rev, 1960), § 21.101, p 521 *et seq.* Our case is not a will case. It involves a tripartite profit-sharing plan which is much more like a life insurance contract than a will.

We conclude, first, that the 1939 statute is not applicable to Emil Hildebrandt's profit-sharing plan. Second, we conclude that where a written profit-sharing plan provides for a change of beneficiaries and the participant therein is free to do so, a change of beneficiary can be accomplished only by procedures which are in substantial compliance with the provisions of the plan itself. This is the rule, at least, for those situations where there are no obstacles or impediments which make substantial compliance impossible. *Dogariu* v. *Dogariu* (1943), 306 Mich 392; *Aetna Life Ins. Co.* v. *Mallory* (1939), 291 Mich 701. The result which must follow is an award of profit-sharing benefits to the appellant.

For these reasons we reverse and remand this cause for entry of a judgment in accordance with this opinion.

Costs to the appellant.

LESINSKI, C. J., and QUINN, J., concurred.