DECISION
{¶ 1} Plaintiff-appellant Nicole Dillard appeals the summary judgment granted by the trial court in favor of defendant-appellee the city of Cincinnati ("the city") in a wrongful-death action. For the following reasons, we reverse the judgment of the trial court.
 {¶ 2} On May 31, 2002, Dillard's thirteen-year-old son, Alphonso Singleton, Jr., and his ten-year-old cousin, Donnie Dillard, were playing on an abandoned vehicle parked on Wehrman Avenue in Cincinnati, Ohio, when the vehicle rolled over on Alphonso, killing him. Dillard sued the city, alleging that the city had failed to keep Wehrman Avenue, which is on a hill, free from nuisance by neglecting to tow the junked and abandoned vehicles parked on that street. She claimed that these vehicles presented a danger to traffic, property, and pedestrians traveling on Wehrman Avenue because the cars could potentially be set in motion and roll down the hill.
 {¶ 3} The city moved for summary judgment, asserting that it was immune from tort liability under R.C. Chapter 2744, the Political Subdivision Tort Liability Act. Although the city acknowledged that it had a statutory duty to keep its roads free from nuisance, it argued that a single abandoned car parked on a city street for, at the most, three days did not amount to a nuisance. The city presented the affidavit of Corvetta Sears, the owner of the car involved in the fatal accident at issue. She stated that she had reported the car stolen from in front of her home, a few blocks from Wehrman Avenue, on May 27, 2002.
 {¶ 4} The trial court granted summary judgment in favor of the city, concluding that the city was immune from liability under R.C. Chapter 2744 because the abandoned car parked on Wehrman Avenue, for at the most three days, did not amount to a nuisance.
 {¶ 5} In her single assignment of error, Dillard now contends that the trial court erred in granting summary judgment in favor of the city. Because our review of the record convinces us that there remain genuine issues of material fact regarding whether the condition of Wehrman Avenue constituted a nuisance, we sustain Dillard's assignment of error.
 {¶ 6} We review the granting of summary judgment de novo.[1] Civ.R. 56(C) provides that summary judgment is appropriate when no genuine issue of material fact remains to be litigated; the moving party is entitled to judgment as a matter of law; and it appears from the evidence that reasonable minds can come to but one conclusion, and with the evidence construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party.[2] The party moving for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists, and once it has satisfied its burden, the nonmoving party has a reciprocal burden to set forth facts showing that there is a genuine issue for trial.[3]
 {¶ 7} R.C. 2744.02(A)(1) provides that a political subdivision is not liable for injury, death, or loss to persons or property incurred in connection with the performance of a governmental or proprietary function. Here, because the city was a political subdivision[4] and because the regulation, maintenance, and repair of public roads were a governmental function,[5] the city was covered by the blanket immunity set forth in R.C. 2744.02(A)(1).
 {¶ 8} But R.C. 2744.02(B) sets forth five exceptions to this blanket immunity. As relevant here, former R.C.2744.02(B)(3),[6] which was the governing law at the time of the fatal accident, provides that "political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, [and] streets * * * within the political subdivisions open, in repair, and free from nuisance." However, before liability may be imposed under this section, it must be shown that the city had either actual or constructive notice of the nuisance.[7] In order to charge a municipality with constructive notice of a nuisance, it must appear that such nuisance existed for a sufficient length of time to have been discovered, and that if it had been discovered, it would have created a reasonable apprehension of a potential danger.[8]
 {¶ 9} In determining what circumstances constitute a nuisance under R.C. 2744.02(B)(3), the Ohio Supreme Court has held that the inquiry should be "whether a condition exists within the political subdivision's control that creates a danger for ordinary traffic on the regularly traveled portion of the road."[9] The court has rejected the view that a city's "liability under R.C. 2744.02(B)(3) is limited to physical conditions in the roadway itself and does not extend to adjacent property."[10] In Harp, the Ohio Supreme Court held that a tree limb, which was not physically obstructing or impeding the flow or visibility of traffic until it fell, was a nuisance under R.C. 2744.02(B)(3), because the limb presented a potential danger to those traveling on the road.[11]
 {¶ 10} To begin, under the circumstances of this case, we are persuaded that the trial court incorrectly focused on whether the single car involved in the accident was a nuisance. Dillard's allegations in her complaint focused on the general condition of Wehrman Avenue. She alleged that Wehrman Avenue was essentially a junkyard for people in the neighborhood to dispose of their old cars, appliances, and trash. She argued that if the city had not allowed Wehrman Avenue to serve as a junkyard for old cars, the accident involving her son would not have occurred. The trial court should have focused on the condition of Wehrman Avenue generally, and not on the length of time the one car involved in the accident had been parked there.
 {¶ 11} In arguing that the condition of Wehrman Avenue was a nuisance, Dillard presented evidence that Wehrman Avenue was on a hill and that at least eight to ten junked or abandoned vehicles were parked along that street on May 31, 2002. She also presented the deposition testimony of Schuyler Murdock. Murdock had worked for over 30 years at Acme Construction Company, located at the corner of Wehrman and Syracuse Avenues. Murdock testified that Wehrman Avenue had been used as a junkyard in the neighborhood for abandoned cars, appliances, and debris. She testified that weeds and trash covered the sidewalks on Wehrman Avenue, making them impassible. She testified that Acme had been making phone calls since the mid-1990s to various city departments, complaining about the trash and abandoned cars. Despite Acme's alleged complaints to the city, the record demonstrates that only one car had been towed from Wehrman Avenue during the six months prior to the fatal accident, even though each city police district had one day set aside each week for towing.
 {¶ 12} The car that had been towed was an abandoned car that had been set in motion by children playing on it, and it had rolled down Wehrman Avenue and crashed into the fence surrounding Acme, barely missing an employee who was weeding in the area. This accident occurred on May 23, 2002, one week prior to the fatal accident. Cincinnati police officer Reginald Lane responded to the scene and completed an accident report. In his deposition testimony, he testified that he spent one and one-half hours on the scene investigating, but could not recall if the other vehicles on Wehrman Avenue that day were junked or abandoned vehicles.
 {¶ 13} Construing the evidence in a light most favorable to Dillard, we hold that reasonable minds could differ as to whether the condition of Wehrman Avenue constituted a nuisance. The potential dangerousness of the abandoned vehicles on Wehrman Avenue was a question of fact to be determined by a jury.[12]
 {¶ 14} There were also questions of fact as to whether the city had actual or constructive notice of the condition and potential dangerousness of Wehrman Avenue. Dillard presented the deposition testimony of police officers who testified that abandoned and junked vehicles were a problem all over the city, including in District 4, which encompassed Wehrman Avenue. While Murdock testified in her deposition that employees of Acme continually called the city to report the condition of Wehrman Avenue, police officer Mike Hill, the "tow" officer for District 4, testified in his deposition that he had never received any phone calls from Acme.
 {¶ 15} The city argues that it does not matter whether the abandoned car or the condition of Wehrman Avenue was a nuisance because they city had a defense to that liability that reinstated its immunity. R.C. Chapter 2744.03 lists defenses that can be asserted to avoid liability under the R.C. 2744.02(B) exceptions. The defenses claimed by the city are contained in R.C.2744.03(A)(3) and (5).
 {¶ 16} R.C. 2744.03(A)(3) provides immunity to a political subdivision where the act or failure to act by an employee was within the discretion of the employee as to "policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee." R.C.2744.03(A)(5) provides that a political subdivision is "immune from liability if the injury [or] death * * * resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources, unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."
 {¶ 17} The city argues that R.C. 2744.03(A)(3) and (5) reinstated its immunity because city police officers had discretion regarding whether to tow abandoned vehicles. While it may have been within the city's discretion not to tow junked and abandoned vehicles, that discretion did not abrogate the city's duty to keep a street free from nuisance.[13] The city originally chose to construct Wehrman Avenue, and it had a duty to use reasonable care to maintain that street and to keep it free from nuisance.
 {¶ 18} Because the question of the city's immunity can only be determined upon the resolution of facts, we hold that summary judgment was inappropriately granted. The single assignment of error is sustained.
 {¶ 19} Accordingly, the judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this decision and the law.
Judgment reversed and cause remanded.
Painter and Sundermann, jj., concur.
[1] Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336, 671 N.E.2d 241.
[2] See State ex rel. Howard v. Ferreri, 70 Ohio St.3d 587,589, 1994-Ohio-130, 639 N.E.2d 1189.
[3] See Dresher v. Burt, 75 Ohio St.3d 280, 293,1996-Ohio-107, 662 N.E.2d 264.
[4] See R.C. 2744.01(F).
[5] See R.C. 2744.01(C)(2)(e).
[6] The current version of R.C. 2744.02(B)(3), which became effective after the events leading to this action occurred, omits any reference to "nuisance."
[7] Vogel v. Wells (1991), 57 Ohio St.3d 91, 97,566 N.E.2d 154.
[8] Jackson v. South Euclid (Sept. 28, 1995), 8th Dist. No. 68169.
[9] Manufacturer's Natl. Bank of Detroit v. Erie Cty. RoadComm. (1992), 63 Ohio St.3d 318, 322, 587 N.E.2d 819.
[10] Harp v. Cleveland Hts. (2000), 87 Ohio St.3d 506, 511,721 N.E.2d 1020.
[11] Id. at 512.
[12] See Theobald v. Bd. of Cty. Commrs. (C.A.6, 2003),332 F.3d 414 (holding that the nature of an abandoned vehicle's obstruction and its dangerousness are questions of fact to be determined by a jury).
[13] See Jones v. Shelly Co. (1995), 106 App.3d 440, 445,666 N.E.2d 316, citing Scheck v. Licking County Commissioners (July 18, 1991), 5th Dist. No. CA-3573 (holding that the discretionary defenses set forth in R.C. 2744.03[A][3] and [5] do not provide immunity where the allegedly negligent act of the political subdivision constitutes a nuisance under R.C. 2744.02[B][3]).