{¶ 1} Defendant-appellant, City of Cleveland ("City"), appeals from a judgment denying its motion for summary judgment on the basis of sovereign immunity. For the reasons that follow, we reverse the judgment of the trial court and remand.
 {¶ 2} In August 2006, plaintiff-appellee Heather Laurie was seriously injured after being thrown from a motorcycle when it collided with a van. The driver of the van, John Albu, was backing out of his driveway onto Mayview Avenue in Cleveland, Ohio, when his van and the motorcycle collided.[1] Laurie brought a personal injury action against the operator of the motorcycle (Jacob Karlowicz), Albu, and the City (claiming that city trees lining the street visually blocked Albu's and Karlowicz's view, and were a contributing cause to the accident).[2] *Page 5 
 {¶ 3} The City answered, denying liability and asserting its sovereign immunity defense. Karlowicz denied liability and filed cross-claims against the City and Albu. Albu also denied liability and asserted a cross-claim against Karlowicz.
 {¶ 4} In April 2008, Laurie moved for partial summary judgment against the City solely on the issues of duty and breach. In May, the City moved for summary judgment arguing that it was immune from liability as a matter of law and that Laurie could not establish proximate cause against the City.
 {¶ 5} In separate judgment entries in June 2008, the trial court granted Laurie's partial summary judgment motion against the City on the issues of duty and breach because the City never opposed those arguments, and it denied the City's motion for summary judgment on the issues of sovereign immunity and proximate cause. It is from these judgments that the City appeals, raising two assignments of error for review:
 {¶ 6} "[1.] The trial court erred by not granting summary judgment in favor of the City of Cleveland as to all claims against it on the basis of sovereign immunity provided to the City by Chapter 2744 of the Ohio Revised Code."
 {¶ 7} "[2.] The trial court erred by granting partial summary judgment in favor of plaintiffs because the Court's order misapplied the exceptions to *Page 6 
sovereign immunity available under R.C. 2744.02(B)(2) and (3) thereby improperly denying the City the benefit of sovereign immunity."
 Final Appealable Order and Jurisdiction {¶ 8} "It is well-established that an order must be final before it can be reviewed by an appellate court. If an order is not final, then an appellate court has no jurisdiction." Gen. Acc. Ins. Co. v. Ins. Co. ofN. Am. (1989), 44 Ohio St.3d 17, 20. Generally, the denial of summary judgment is not a final appealable order. See, e.g., State ex rel.Overmeyer v. Walinski (1966), 8 Ohio St.2d 23, 24.
 {¶ 9} Under R.C. 2744.02(C), "[a]n order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order."
 {¶ 10} In Hubbell v. Xenia, 115 Ohio St.3d 77, 2007-Ohio-4839, the Ohio Supreme Court held that "[w]hen a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)." Id. at the syllabus. The Court emphasized that "[a] court of appeals may not avoid deciding difficult questions of immunity" when a trial court denies summary judgment, thereby denying a political subdivision the "benefit" of immunity. Id. at _20. The Court made clear *Page 7 
that, "absent some other procedural obstacle," a court of appeals "must exercise jurisdiction over an appeal of a trial court's decision overruling a Civ. R. 56(C) motion for summary judgment in which a political subdivision *** seeks immunity." Id. at _21.
 {¶ 11} In this case, there were multiple defendants, as well as multiple claims and cross-claims remaining after the trial court denied summary judgment to the City. In its judgment entry, the trial court did not certify that "there is no just reason for delay" as required under Civ. R. 54(B) when multiple claims and/or parties remain.
 {¶ 12} Some courts have held (even after Hubbell) that under these circumstances, the judgment is not a final appealable order. SeeSullivan v. Anderson Twp., 1st Dist. No. C-070253, 2008-Ohio-1438, andAbram v. Avon Lake, 9th Dist. Nos. 06CA009061 and 07CA009076,2007-Ohio-5476. These courts, distinguishing Hubbell (because there were not multiple parties or claims), have held that the procedural requirements of Civ. R. 54(B) still apply when there are multiple claims and/or multiple parties remaining.[3] *Page 8 
 {¶ 13} This court has not yet addressed this issue sinceHubbell was decided.[4] For the reasons that follow, we find that the order denying the City's summary judgment motion was a final appealable order.
 {¶ 14} R.C. 2744.02(C) gives appellate courts subject matter jurisdiction to address the merits of a denial of summary judgment based upon immunity. It is our view that this statute prevails over the requirements of Civ. R. 54(B).
 {¶ 15} In Morgan v. W. Elec. Co., Inc. (1982), 69 Ohio St.2d 278, the Ohio Supreme Court held that "where conflicts arise between the Civil Rules or Appellate Rules and the statutory law, the rule will control the statute on matters of procedure and the statute will control the rule on matters of substantive law." Id. at 281, citing Boyer v.Boyer (1976), 46 Ohio St.2d 83, 86.
 {¶ 16} "Subject-matter jurisdiction of a court connotes the power to hear and decide a case upon its merits." BCL Ents. Inc. v. Ohio Dept. ofLiquor Control (1997), 77 Ohio St.3d 467, 469, quoting Morrison v.Steiner (1972), 32 Ohio St.2d 86, paragraph one of the syllabus. "[It] defines the competency of a court to render a valid judgment in a particular action." Morrison at 87. It is *Page 9 
well established that subject matter jurisdiction issubstantive law, not procedural. Akron v. Gay (1976), 47 Ohio St.2d 164,165-166. (Emphasis added.)
 {¶ 17} Thus, R.C. 2744.02(C), being substantive, controls over the Rules of Civil Procedure; namely, Civ. R. 54(B). Therefore, we find that this court has jurisdiction to address the merits of this appeal.
 Summary Judgment Standard of Review {¶ 18} We review an appeal from summary judgment under a de novo standard. Baiko v. Mays (2000), 140 Ohio App.3d 1, 10. Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.Northeast Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs. (1997),121 Ohio App.3d 188, 192.
 {¶ 19} Civ. R. 56(C) provides that before summary judgment may be granted, a court must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." State ex rel. Duganitz v. Ohio AdultParole Auth. (1996), 77 Ohio St.3d 190, 191.
 {¶ 20} The moving party carries an initial burden of setting forth specific facts that demonstrate his or her entitlement to summary judgment. Dresher v. *Page 10 Burt (1996), 75 Ohio St.3d 280, 292-293. If the movant fails to meet this burden, summary judgment is not appropriate, but if the movant does meet this burden, summary judgment will be appropriate only if the nonmovant fails to establish the existence of a genuine issue of material fact. Id. at 293.
 Sovereign Immunity {¶ 21} In its first assignment of error, the City argues that the trial erred when it denied its summary judgment motion because it claims that it was entitled to immunity as a matter of law.
 {¶ 22} The Supreme Court set forth a three-tiered analysis to determine whether a political subdivision is immune from tort liability: the first tier is to establish immunity under R.C. 2744.02(A)(1); the second tier is to analyze whether any of the exceptions to immunity under R.C. 2744.02(B) apply; if so, then under the third tier, the political subdivision has the burden of showing that one of the defenses of R.C. 2744.03 applies. Cater v. Cleveland (1998), 83 Ohio St.3d 24,28; Hubbard v. Canton City School Bd. of Edn., 97 Ohio St.3d 451,2002-Ohio-6718, at _10-12. If a defense applies, then immunity is reinstated. Id. Both parties here agree that the third tier is not implicated in this appeal.
 {¶ 23} R.C. 2744.02(A)(1) provides a general grant of immunity as follows: "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the *Page 11 
political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."
 {¶ 24} In the majority of cases, the broad immunity of R.C. Chapter 2744 provides a complete defense to a negligence cause of action.Turner v. Central Local School Dist. (1999), 85 Ohio St.3d 95, 98;Sabulsky v. Trumbull Cty., 11th Dist. No. 2001-T-0084, 2002-Ohio-7275, at _11 ("R.C. Chapter 2744 provides nearly absolute immunity to political subdivisions in order to limit their exposure to money damages").
 {¶ 25} The immunity afforded a political subdivision in R.C. 2744.02(A)(1), however, is not absolute. Cater, supra, at 28, citingHill v. Urbana, 79 Ohio St.3d 130, 1997-Ohio-400. Under the second tier of the analysis then, courts must decide whether any exceptions to immunity apply under R.C. 2744.02(B).
 {¶ 26} There is no question in this case that the City is a political subdivision for purposes of Chapter 2744. Thus, this case turns upon whether, under the second prong of the analysis, an exception to the City's blanket immunity applies; specifically whether R.C. 2744.02(B)(2) or (3) exception applies.
 R.C. 2744.02(B)(2) Exception to Immunity {¶ 27} Under R.C. 2744.02(B)(2), "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts *Page 12 
by their employees with respect to proprietary functions of a political subdivision." (Emphasis added.)
 {¶ 28} The City contends that the R.C. 2744.02(B)(2) exception to immunity does not apply because tree maintenance is a governmental function. Laurie maintains that tree trimming is a proprietary function and thus, there are genuine issues of material fact regarding whether the City is liable for the negligence of its employees in failing to trim the trees.
 {¶ 29} Laurie is correct that the General Assembly "did not include any references to tree trimming" in its express list of "governmental functions." See R.C. 2744.01(C)(2). The general definition of "governmental function," however, states that it is one "that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement." See R.C. 2744.01(C)(1).
 {¶ 30} The current version of R.C. 723.01, which went into effect on April 9, 2003, provides:
 {¶ 31} "Municipal corporations shall have special power to regulate the use of the streets. *** [T]he legislative authority of a municipal corporation shall have the care, supervision, and control of the public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation. The liability or immunity from liability of a municipal *Page 13 
corporation for injury, death, or loss to person or property allegedly caused by a failure to perform the responsibilities imposed by this section shall be determined pursuant to divisions (A) and (B) (3) of section 2744.02 of the Revised Code."[5]
 {¶ 32} Courts have long recognized that the former R.C. 723.01 imposed an obligation on the City to care for, inter alia, "public highways, streets, avenues, alleys, sidewalks, public grounds ***." Joseph v.Portsmouth (1975), 44 Ohio St.2d 155,156. This obligation included care of tree lawns within a municipality. Id. (area between paved street and paved sidewalk falls within municipalities' obligations under R.C. 723.01); see, also, Zupancic v. Cleveland (1978), 58 Ohio App.2d 61
(although "tree lawn" not specifically mentioned in R.C. 723.01, it is within the scope of the statute).
 {¶ 33} Laurie aptly points out that Joseph and Zupancic were decided under the former R.C. 723.01. While we agree with Laurie that these cases would no longer be applicable regarding a "nuisance" analysis, we find that they are still good law with respect to classifying a "tree lawn" within the ambit of a city's care under R.C. 723.01. The General Assembly did not alter the language *Page 14 
"public highways, streets, avenues, alleys, sidewalks, public grounds, ***." It merely removed the requirement that municipalities "shall cause them to be kept open, in repair, and free from nuisance."
 {¶ 34} Thus, we conclude that tree trimming is a "governmental function" under the general definition set forth in R.C. 2744.01(C)(1) because it is an obligation imposed upon the City as a sovereign under R.C. 723.01.
 {¶ 35} Alternatively, tree trimming could fall under R.C. 2744.01(C)(2)(e), which provides that "[a] `governmental function' includes, but is not limited to *** [t]he regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, and public grounds[.]" Because this language essentially mimics the language of R.C. 723.01, we agree with the City that tree trimming falls within this subsection as a governmental function. See, also, Featherstone v. Columbus, 10th Dist. No. 06AP-89, 2006-Ohio-3150, at _12 (city's forestry department's pruning the branches of trees abutting public sidewalk was governmental function).[6]
 {¶ 36} Moreover, while R.C. 723.01 makes municipal corporations responsible for the care of its tree lawns (and the trees that grow on them), that *Page 15 
statute now makes it clear that liability or immunity for injuries or losses must still be determined by R.C. 2744.02. See R.C. 723.01.
 {¶ 37} Thus, since trimming trees is a governmental function, the negligence exception for proprietary functions set forth in R.C. 2744.02(B)(2) does not apply here.
 R.C. 2744.02(B)(3) Exception to Immunity {¶ 38} Pursuant to R.C. 2744.02(B)(3), an exception to immunity exists for injuries or death caused by a political subdivision's "negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads ***."
 {¶ 39} For purposes of R.C. Chapter 2744, the term "public roads" means "public roads, highways, streets, avenues, alleys, and bridges within a political subdivision." R.C. 2744.01(H). This definition explicitly excludes "berms, shoulders, rights-of-way, or traffic control devices unless the traffic control devices are mandated by the Ohio manual of uniform traffic control devices." Id.
 {¶ 40} The City maintains that the R.C. 2744.02(B)(3) exception is not applicable either because the trees at issue were not an "obstruction" in the roadway, as required by this subsection. Laurie argues that questions of fact remain as to whether the City "negligently failed to remove a dangerous visual *Page 16 
obstruction from the roadway." Thus, the critical inquiry here is whether the trees at issue were "obstructions" as contemplated by R.C. 2744.02(B)(3).
 {¶ 41} When determining whether summary judgment is appropriate, we must view the facts in a light most favorable to the party opposing summary judgment. Thus, we must accept Laurie's facts as true. Laurie maintains that the overhanging trees created a "visual obstruction" which "left Mayview roadway in disrepair." She argues that she presented evidence that raised questions of fact as to whether the overgrown branches blocked Albu's view from seeing the motorcycle or whether they blocked Karlowicz's view from seeing Albu's van.
 {¶ 42} Laurie's expert, Fred Lickert, averred that the trees created a "view-obstruction," contributing to the cause of the accident. Lickert also stated that the parked cars, adjacent to Albu's driveway, were a visual obstruction, which contributed to the cause of the accident.[7]
 {¶ 43} Officer James Masella testified that the tree located at 2017 Mayview Avenue had branches that hung three feet above the tree lawn and that the other tree, at 2013 Mayview, had branches that hung five feet above the tree lawn. The trees were located in the direction Albu would have had to look to see the motorcycle *Page 17 
coming. Officer Masella also opined that the trees' branches created a "visual obstruction." He stated, "It's not like a solid wall. It's a branch."
 {¶ 44} Albu stated that he never even looked in the direction of the trees (which was where the motorcycle came from) so the trees could not have affected his vision at all.[8]
 {¶ 45} Even viewing Laurie's evidence in a light most favorable to her, at most, it establishes a question of fact as to whether the treesvisually obstructed Albu's view or Karlowicz's view. Thus, the narrow issue here is, can a "visual obstruction" be an "obstruction" for purposes of liability under R.C. 2744.02(B)(3). We agree with the City that the Ohio Supreme Court's recent decision, Howard v. Miami Twp. FireDiv., 119 Ohio St.3d 1, 2008-Ohio-2792, answers this question.
 {¶ 46} In Howard, the Supreme Court explained that "for purposes of R.C. 2744.02(B)(3), an `obstruction' must be an obstacle that blocks or clogs the roadway and not merely a thing or condition that hinders or impedes the use of the roadway or that may have the potential to do so." Id. at _30. In reaching *Page 18 
this conclusion, the Supreme Court found that "a critical aspect of the analysis" was the legislative history of this particular subsection. SeeHoward at _24-29.
 {¶ 47} R.C. 2744.02(B)(3) was amended by S.B. 106, effective April 2003. The prior version of R.C. 2744.02(B) (3) stated: "[P]olitical subdivisions are liable for injury, death, or loss to person or property caused by their failure to keep public roads, highways, streets,avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or publicgrounds within the political subdivisions open, in repair, and free fromnuisance ***." (Emphasis added.)
 {¶ 48} The Ohio Supreme Court made it clear that the current version of R.C. 2744.02(B)(3) does not impose the same duty of care on political subdivisions as it did when the statute's language included "free from nuisance." Howard at _25. The Court stated, "we believe that the General Assembly purposely replaced the phrase `free from nuisance' with `other negligent failure to remove obstructions.' *** We are persuaded that the legislature's action in amending R.C. 2744.02(B)(3) was not whimsy but a deliberate effort to limit political subdivisions' liability for injuries and deaths on their roadways." Id. at _25-26.
 {¶ 49} The Supreme Court explained that "the General Assembly had attempted previously to make the same amendment to R.C. 2744.02(B)(3) as part of one of its tort-liability-limitation measures, Am. Sub. H.B. No. 350 [Tort *Page 19 
Reform Act], 146 Ohio Laws, Part II, 3867, 3987, effective January 27, 1997." Id. at _27, citing Harp v. Cleveland Hts., 87 Ohio St.3d 506,509, 2000-Ohio-467, fn. 1. It reasoned that at the time the legislature enacted H.B. 350, it "was aware of judicial decisions interpreting the term `nuisance' broadly to reach an array of acts or omission that endanger life or health." Id. at _27 (discussing Manufacturer's Natl.Bank of Detroit v. Erie Co., Road Comm. (1992), 63 Ohio St.3d 318, where it had interpreted "the former R.C. 2744.02(B)(3)'s use of the term `nuisance' to include `conditions that directly jeopardize the safety of traffic on the highway' even if they did not appear on the roadway itself").
 {¶ 50} It further explained that after it held H.B. 350 unconstitutional in State ex rel. Ohio Academy of Trial Lawyers v.Sheward, 86 Ohio St.3d 451, 458, 1999-Ohio-123, it continued to adhere to prior precedent that "construed `nuisance' in broad terms."Howard at _28. It cited as an example its decision in Harp, supra, where it "held that a defective tree limb threatening to fall on a public roadway, but not actually on the roadway, could constitute a nuisance under R.C. 2744.02(B)(3) and that a political subdivision's duty of care extended beyond merely removing obstructions from public roads." Id.
 {¶ 51} The Supreme Court concluded:
 {¶ 52} "Given the General Assembly's prior inclusion of the same language in Am. Sub. H.B. No. 350, our precedent that broadly defines the term `nuisance,' *Page 20 
and that S.B. 106 also limited the definition of `public roads' from a more expansive reading that included `berms, shoulders, rights-of-way, or traffic control devices' to one that focused solely on the roadway itself, see Howard, 171 Ohio App.3d 184, 2007-Ohio-1508, _17, we discern a legislative intent to limit political-subdivision liability for roadway injuries and deaths. The General Assembly, in furtherance of its goal, used the word `obstructions' in a deliberate effort to impose a condition more demanding than a showing of a `nuisance' in order for a plaintiff to establish an exception to immunity." Id. at ¶ 29.
 Howard Applied to the Facts of this Case {¶ 53} Laurie does not contend that the tree limbs here were actually blocking or clogging the road in some way. She does not argue that they were hanging onto the road itself, causing motorists to drive around them, or that they were in any way physically obstructing the road. In fact, Laurie's evidence, if believed, establishes that the trees were — at most — a "visual obstruction."
 {¶ 54} After reviewing Howard, we agree with the City that the trees at issue were not an "obstacle" blocking or clogging Mayview Avenue. Rather, under Howard, a visual obstruction can only amount to "a thing or condition that hinders or impedes the use of the roadway or that may have the potential to do so," but it cannot constitute an "obstruction" in the roadway for purposes of the immunity exception. *Page 21 
 {¶ 55} Laurie claims that Howard is distinguishable because the Supreme Court was "concerned with whether black ice that had formed on the road constituted an `obstruction.'" Laurie argues that "[t]he dissimilarity between black ice and low-hanging trees is patent." Based on the Ohio Supreme Court's reasoning in Howard and its extensive review of the legislative history of R.C. 2744.02(B)(3), we must disagree.
 {¶ 56} Again, in explaining the previous exception to immunity, the Supreme Court in Howard cited Harp, supra, a case similar to the instant case. In Harp, a tree branch had been identified by the City of Cleveland Heights as being one that needed "priority pruning" because it had "deadwood" on it. Before the city pruned the tree, however, a branch overhanging the road fell on a passing motorist and killed her. The Ohio Supreme Court held in Harp that the city could be held liable under the former R.C. 2744.02(B)(3) because the defective limb, threatening to fall on the road, but not actually on the road, could constitute a nuisance. Harp at 512. But in Howard, the Supreme Court made it clear that under the current version of R.C. 2744.02(B)(3), the defective tree limb in Harp would no longer provide an exception to immunity.[9] *Page 22 
 {¶ 57} Thus, under Harp and the former R.C. 2744.02(B)(3), the overhanging tree branches at issue here could have constituted a "nuisance" and the exception to immunity could have applied. But under the current version of the statute, as explained in Howard, the overhanging tree branches were not an "obstruction." Accordingly, the R.C. 2744.02(B)(3) exception does not apply.
 {¶ 58} Therefore, we find that the trial court erred when it denied the City's summary judgment motion. The City is entitled to immunity as a matter of law. The City's first assignment of error is sustained.
 {¶ 59} In its second assignment of error, the City argues that the trial court erred when it granted partial summary judgment in favor of plaintiffs, finding that the City had a duty to Laurie to keep the trees trimmed and that it breached that duty. Finding the City to be immune from liability in the first assignment of error, this assignment of error is moot.[10]
 {¶ 60} Accordingly, the judgment of the Cuyahoga County Court of Common Pleas is reversed and remanded for further proceedings consistent with this opinion.
It is ordered that appellant recover from appellees costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 23 
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, J., CONCURS;
COLLEEN CONWAY COONEY, A.J., CONCURS IN JUDGMENT ONLY
[1] Albu testified in his deposition that he had partially backed out of his driveway and had stopped to look for traffic when he was hit by the motorcycle. He stated that he never got the chance to look in the direction the motorcycle was coming from because he was struck by the motorcycle before he could. Neither Laurie nor Jacob Karlowicz, the motorcycle operator, remember details of the accident.
[2] Laurie's daughter also brought consortium claims in the action. In addition, Laurie brought claims against two homeowners on Mayview Avenue, but later dismissed them voluntarily.
[3] We recognize that this exact issue, "[w]hether an order that denies a political subdivision the benefit of an alleged immunity from liability as provided in Chapter 2744 of the Ohio Revised Code or any other provision of the law is a final appealable order when the subject order lacks a Civ. R. 54(B) certification[,]" is currently pending before the Ohio Supreme Court. See Sullivan v. Anderson Twp.,118 Ohio St.3d 1460, 2008-Ohio-2823. The Supreme Court accepted discretionary appeal from the First District (in Sullivan) and also certified a conflict between the First District and the Fourth District (conflict case:Drew v. Laferty (June 1, 1999), 4th Dist. No. 98CA522). Notably, the Fourth District case was decided nearly a decade prior toHubbell. Oral arguments in the matter were recently heard on January 21, 2009.
[4] Prior to Hubbell, this court held that an order denying a political subdivision immunity was not a final appealable order if the order did not resolve all claims among all parties or contain the express Civ. R. 54(B) language. See Malloy v. Brennan (Mar. 25, 1999), 8th Dist. No. 75183 (addressing the 1997 version of R.C. 2744.02(C), which is identical to the current version).
[5] Former R.C. 723.01 stated: "the legislative authority of a municipal corporation shall have the care, supervision, and control of the public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation, and the municipal corporation shall cause them to be keptopen, in repair, and free from nuisance." (Emphasis added to show the language removed from the statute.)
[6] While Laurie attempts to discredit Featherstone (and the City's other cases), she does not cite one case that has held that tree trimming is a proprietary function.
[7] Lickert's expert report fails to include Karlowicz's breath alcohol content (which was over twice the legal limit) as being anycontributing factor to the accident.
[8] Laurie claims that Albu stated he looked in the "direction of the motorcycle, but did not see it," so "his view had to have been obstructed." A review of the transcript, however, reveals the opposite. Albu stated several times, in several different ways throughout the deposition, that he never saw the motorcycle because he never got the chance to look in the motorcycle's direction; i.e., that the motorcycle hit him before he could even look its way.
[9] We further note that in Harp, the defective tree limb was only analyzed under the exception set forth in former R.C. 2744.02(B)(3) — under the nuisance language. It was not analyzed under R.C. 2744.02(B)(2) as an exception to immunity due to the negligence of the city regarding proprietary functions. Therefore, albeit indirectly, we find that Harp supports our conclusion that tree trimming is a governmental function.
[10] All other arguments set forth by both parties that do not relate to sovereign immunity are not properly before this court and thus, we cannot address them. *Page 1