DEMEREAUX *v.* THE STATE OF OHIO.

(Decided May 2, 1930.)

*Mr. N. B. Gilliland,* for plaintiff in error.
*Mr. Dustin W. Gustin,* prosecuting attorney, and *Mr. Emery F. Smith,* for defendant in error.

MAUCK, J.   George Demereaux was indicted, charged with the unlawful possession of intoxicating liquors on November 27, 1928.   It was further charged that this constituted a third offense against the prohibition laws, in that Demereaux had pleaded guilty to a like charge of unlawful possession on the 13th day of February, 1928, in the municipal court of Portsmouth, and again, on May 5, 1928, had been

found guilty in the municipal court of a like offense. He entered a plea of not guilty, was tried, and a verdict of guilty returned. He was sentenced to the penitentiary, and brings this proceeding to reverse that judgment.

Upon the trial of the case Demereaux admitted he had pleaded guilty and been fined on February 13, 1928, the first offense charged. He denied that he had been found guilty of a second offense, and denied that he was guilty of the offense of unlawful possession on November 27, 1928, as charged in the indictment. As to this offense, the evidence showed that, in the home occupied by Demereaux and his wife, there was a quantity of intoxicating liquor found concealed in a copper tank in the wall. Demereaux was at the house when the search was made, and about the time the liquor was uncovered he left and was not located for some time. Both he and his wife claimed that the wife owned the liquor, and that he did not. The circumstances under which it was found, and Demereaux's flight thereafter, warranted the jury in returning a verdict of guilty of the offense on November 27, 1928. The question, therefore, is whether proof was made of the so-called second offense of May 5, 1928, or whether the finding of guilt of the offense of November 27, 1928, was in fact the finding of a second rather than of a third offense.

The record shows that, if the plaintiff in error was convicted of what is called in the indictment the second offense, it was by virtue of a trial in the municipal court, not on May 5, 1928, but on April 3, 1928. This variance in dates is immaterial. It fur-

ther appears, not by the records of the municipal court, but by parol testimony, that, if the plaintiff in error was at that time convicted, it was when the municipal court was presided over by Mr. Millar, an attorney of the Portsmouth bar, and it is claimed by the plaintiff in error that Mr. Millar was acting wholly without authority. It is, of course, understood that Mr. Millar was not the duly elected municipal judge of the city of Portsmouth. Corpus Juris, in volume 33, at page 1024, says:

"Judicial power may be conferred upon a court or person only by authority of law, and it is the right of litigants to have their cases tried before the judge duly chosen to discharge the judicial function of the court. Hence, in the absence of authority of law, a judge can not delegate his judicial power, nor can parties, by their consent, confer judicial authority; nor will they be estopped by their consent, from denying the jurisdiction."

Mr. Millar testifies that he was appointed to substitute for the municipal judge either by the judge himself or by the mayor of the city. Section 1579-491, General Code, relating to the municipal court of Portsmouth, reads:

"Whenever the incumbent of any office created by this act shall be temporarily absent, or incapacitated from acting as such, the judge shall appoint a qualified substitute and who shall serve during such disability. When said judge shall be incapacitated from presiding in any case or by reason of absence or inability be unable to attend sessions of the court, the mayor of the city may appoint some attorney-at-law having the required qualifications to act in his stead."

The first reading of this section might lead to the view that the municipal judge may under the first sentence thereof appoint his own substitute, when occasion therefor arises. Clearly the second sentence authorizes the mayor of the city of Portsmouth to appoint such substitute. It would be rather unfortunate if this section were so construed as to enable the municipal judge to appoint his own substitute, thus enabling both the mayor and the judge at the same time to designate different individuals to perform the functions of the absent or disqualified judge. Nor would it be desirable that a judge, disqualified or incapacitated by reason of interest or relationship in causes, should select some one to preside in his stead. If the section were interpreted to permit the judge to name a substitute, it would be practically equivalent to permitting him to delegate at will the performance of those judicial functions which the law contemplates shall be performed only by the one elected to the office he holds. Clearly what the statute referred to means is that, when a clerk or bailiff or like officer of the court, except the judge, is absent or incapacitated, the judge may appoint a substitute for such officer, but, when the judge himself shall be incapacitated from presiding, or be unable to attend the sessions of the court, the mayor may appoint an attorney of the required qualifications to act as municipal judge.

In the instant case it is not quite clear who appointed Mr. Millar. The appointment, of course, ought to have been in writing and under the mayor's seal, and should have been made of record in the court where the substitute for the judge was to sit,

and the appointment in writing should have indicated what the law clearly requires, and that is that the substitute continue to act as municipal judge only so long as the regular judge should be incapacitated, or, by reason of absence or inability, should be unable to perform the functions for which he was elected. Such appointment loses all of its force, of course, after the regular judge has once resumed his place upon the bench.

An affidavit has been attached to the petition in error that, if considered, would indicate the improbability of the appointment of Mr. Millar having been made by the mayor. This is not a competent method of showing that fact, and even if that manner of proof had been acquiesced in below, and it was not, it could not be considered in this court, inasmuch as it has not been incorporated in the bill of exceptions. However, as much as we deprecate the irregular way in which the substitute for the regularly elected judge assumed the functions of the judge in this case, the record shows some color of title to appointment as substitute, and he was a *de facto* acting municipal judge, and the judgment, if any, entered by him, is not now open to attack on that ground. *Stiess* v. *State,* 103 Ohio St., 33, 132 N. E., 85.

Passing the competency of the trial judge, we are brought to the question of what proof there was of the truth of the allegation in the indictment that the accused was guilty of a second offense in May, 1928. To prove a second offense, there must be proof of a judgment of conviction. *Carey* v. *State,* 70 Ohio St., 121, 70 N. E., 955; *Staniforth* v. *State,* 24 Ohio App., 208, 156 N. E., 924. The best and the only com-

petent evidence of such previous judgment of conviction is the complete record thereof. A judgment of conviction, says 1 Freeman on Judgments (5th Ed.), Section 99, consists of two parts, namely:

"1. The facts judicially ascertained, together with the manner of ascertaining them entered of record:

"2. The recorded declaration of the court pronouncing the legal consequences of the facts thus judicially ascertained."

Where a judgment only touches some collateral matter in issue the whole record need not be introduced. "But if the party offering a record does so in support of a plea of *res judicata,* or to show that he has acquired or his adversary has lost some title or right either by the judgment alone, or by it and proceedings taken for its enforcement, 'the whole record, so far as it concerns the formal stages, must be either produced or exemplified * * * nor can the record be patched by parol.' If the judgment or the judgment and findings are offered in evidence, without producing or offering the other parts of the judgment-roll, they must be excluded." 2 Freeman on Judgments (5th Ed.), Section 1030.

To prove the so-called second offense, the state offered in evidence the following record, as it appears on what is called the criminal docket of the municipal court of Portsmouth:

"Case No. 9622.

"State of Ohio v. George Demereaux.

"Be it remembered that on the third day of April, 1928, came Harry Sheets and who filed written complaint against one George Demereaux; said com-

plaint being in substance as follows: Possessing intoxicating liquors, second offense.

"Whereupon the following proceedings were had:

"April 3, 1928, defendant arraigned before me the said judge and upon hearing said complaint pleaded 'not guilty' to the same and filed waiver of trial by jury and submitted to be tried to the court.

"Trial had accordingly, the parties being present; witnesses sworn and examined on behalf of the state, to wit, ———. On behalf of the defendant, to wit, ———.

### Sentence.

"It is therefore adjudged and ordered by the court that said defendant pay a fine of three hundred dollars and costs.

"Motion for new trial.

"Commitment issued accordingly to bailiff."

This record was unsigned. The evidence showed that this was the only record of the judgment, and that the original complaint on which the supposed trial was had could not be produced.

The kind of record to be kept by the municipal court is not very definitely prescribed by statute. Section 11 of the act creating the municipal court of Portsmouth, Section 1579-469, General Code, provides that the judge of that court shall prescribe forms and establish a system for the docketing of causes, not otherwise provided for in the act itself, and shall designate the mode and method of keeping and authenticating the record of proceedings before the court. In the absence of any knowledge of what forms have been prescribed and established for that court, we assume that the record before us com-

plies with that court's regulations. The court's rules, however, cannot supersede the statutes. *Eichenlaub* v. *State,* 36 Ohio St., 140. By Section 1579-468, General Code, it is provided that the procedure in criminal cases in the municipal court of Portsmouth shall be the same as that of police courts, mayors of municipalities, or justices, unless otherwise herein provided. Inasmuch as the court has the jurisdiction of justice's, mayor's and police courts, it would seem that it ought to conform in its procedure and system of records to the highest requirements relating to any of these three courts.

Section 4596, General Code, requires the clerk of police courts to keep a journal of all orders and judgments of the court, and that the judge read, correct, and sign the same on the day following their entry. The section provides that the journal entries, in connection with the information and other papers, shall constitute and have the force of a final record. It apparently does not require that these other papers be recorded, but, if they are not incorporated into what in the common pleas court would be called the complete record, they must be preserved with scrupulous care or there can be no final record in the case. Section 1579-483, General Code, relating to the municipal court of Portsmouth, provides that the clerk "shall file and safely keep all journals, records, books and papers, belonging to and appertaining to the court," and the journals referred to in this section must be the journals referred to in Section 4596, relating to the police court, and must have the same effect.

If the record in this case be tested by the require-

ments relating to police courts, it is manifestly imperfect in that it shows no journal entry at all. Moreover, it is not a judgment of conviction, as defined by Freeman, whether called a journal entry or not. The so-called judgment in this case contains no finding, and is nothing but the declaration of a sentence. We hesitate, however, about holding that the system of records in the municipal court is wholly repugnant to the statutes requiring a system of dockets and journals. Too much emphasis ought not be put on the word "journal." It may be that the regulations of the municipal court require the keeping of but one book, and that those regulations contemplate that the docket not only covers what is ordinarily found in a docket, but what is found in a journal, as well. Even so, however, it should be regularly read, approved and signed, as the law provides for journals of police courts.

Let us test the record in this case, however, by even the simple requirements of a justice's or mayor's docket. By Section 4536, General Code, the mayor is required to keep such a criminal docket as a justice keeps. By Section 1740, General Code, a justice is required to enter in his criminal docket all the proceedings before him, with a like particularity to that required in keeping a civil docket. By Section 1724, General Code, a justice is required to show upon his civil docket the manner in which he acquires jurisdiction of the defendant, the filing of the bill of particulars, and its nature, and, when not of too great length, to spread the same at length on the docket. He is required to disclose the names of the witnesses sworn, and at whose request, and

the verdict of the jury and the judgment. And clearly most of these are vital requirements if the parties are to have the benefit of the adjudication and secure protection against renewed litigation over the same controversy.

The record offered in evidence against the accused in this case falls much short of complying with the requirements imposed by the Justices' Code. Some of these shortcomings are mere irregularities, others would require a reversal, if error were prosecuted, and in other particulars the record is so faulty as to prove nothing of value in this case. The record, for instance, does not show how jurisdiction was obtained over Demereaux. Moreover, it is essential that it be shown that the jurisdiction of the court was invoked by affidavit, in the manner required by law, *Eichenlaub* v. *State, supra,* and there is nothing to indicate the filing of an affidavit herein. If it be taken literally, no witnesses were sworn in behalf of either party. Moreover, as we have already pointed out, there was no finding of fact to support the sentence. There was no inquiry after the finding of fact as to whether the defendant had anything to say why sentence should not be passed upon him. Whether the sentence would support an execution we need not determine. It would not support a mittimus to jail or workhouse, and in not providing the amount of credits to which the defendant would be entitled by service in the county jail it falls under the condemnation of *Hamilton* v. *State,* 78 Ohio St., 76, 84 N. E., 601. But if all these errors and irregularities were condoned, and it be held that Demereaux was actually tried, and a judgment of conviction had against him, it does not appear that he was

convicted of any offense known to the criminal law. The charge according to the record was: "Possessing intoxicating liquor. Second offense." Possessing intoxicating liquors is not an offense against the laws of Ohio. The charge made in the indictment arose under Section 6212-17, General Code, which provides for a sentence to the penitentiary of one guilty of a third offense against the provisions of Sections 6212-13 to 6212-20, General Code. It may be guessed that in the municipal court for a second offense Demereaux was being tried for unlawfully possessing intoxicating liquor in violation of Section 6212-15, General Code, but there is no evidence of that kind. This record does not show a charge or conviction of violating the prohibition law, or any law, and consequently proved nothing. It might well be that, if all the original papers had been brought into the case, they, even with this imperfect judgment, might have made a case. As the record stands, the state did not prove the so-called second offense. It did prove the so-called third offense, which as a matter of law becomes the second offense of the accused.

The finding of the jury and the judgment of the court that Demereaux was guilty of the possession of intoxicating liquor on November 27, 1928, is affirmed. The finding and judgment that this was a third offense is reversed, and the case is remanded to the common pleas court, with directions to resentence Demereaux as guilty of a second offense against the prohibition laws. *Carey* v. *State, supra.*

*Judgment modified and cause remanded.*

MIDDLETON, P. J., and BLOSSER, J., concur.