DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Patricia I. Staples, appeals the judgment of the Municipal Court of Bellevue, Ohio, which granted summary judgment to appellees, Consumer Portfolio Services, Inc. ("CPS") and the city of Bellevue ("Bellevue"). For the following reasons, the judgment is affirmed. *Page 2 
 {¶ 2} According to appellant's affidavit submitted in opposition to summary judgment, on August 22, 2003, appellant parked her car on Northwood Street in Bellevue, Ohio, where she had lived for over six years. During a storm, a tree allegedly owned by Bellevue located between the sidewalk and the pavement fell onto appellant's car. The parties did not dispute that appellant's car was legally parked on the roadside.
 {¶ 3} CPS held a note from appellant in the amount of $20,369.10, the purchase money for her car. Appellant's insurance company declared the car to be a "total loss" and issued payment directly to CPS in the amount of $16,599.99. CPS filed a complaint seeking payment from appellant for the balance of the note. It calculated the balance due, including interest and fees, to be $3,351.05.
 {¶ 4} Appellant then filed a third-party complaint against Bellevue, alleging its liability for failing to keep its roads open, maintained in a safe manner, and free from nuisance pursuant to the exception to municipal immunity contained in R.C. 2744.02(B) and 723.01. CPS and Bellevue both filed motions for summary judgment.
 {¶ 5} The trial court held that although a municipality may be liable for trees which overhang roadways, appellant could not recover since her car was not "a part of ordinary traffic on the regularly traveled portion" of the road since it was parked on the side of the road, citingManufacture's Natl. Bank of Detroit v. Erie Cty. Road Comm. (1992),63 Ohio St.3d 381. With respect to CPS, the trial court rejected appellant's arguments that CPS impaired her ability to negotiate with her insurer and granted judgment to CPS for the balance of the note. *Page 3 
 {¶ 6} Appellant timely appealed and raises four assignments of error:
 {¶ 7} "Assignment of Error No. 1: The trial court erred in granting summary judgment to third-party defendant/appellee City of Bellevue against third-party plaintiff/appellant Patricia I. Staples.
 {¶ 8} "Assignment of Error No. 2: The trial court erred in ruling as a matter of law that the City of Bellevue's liability imposed upon it by Chapter 2744 of the Ohio Revised Code does not apply to legally parked vehicles on a city street.
 {¶ 9} "Assignment of Error No. 3: The trial court erred in ruling that plaintiff Consumer Portfolio Services, Inc. did not interfere with defendant/appellant Patricia I. Staples' ability to negotiate with her insurance company.
 {¶ 10} "Assignment of Error No. 4: Acting Judge Barry W. Bova lacked subject matter jurisdiction to grant summary judgment in these proceedings for lack of Ohio Supreme Court appointment to the case."
 {¶ 11} The appellate court reviews a grant of summary judgment de novo, standing in the shoes of the trial court. Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105. Summary judgment may only be granted when there remains no genuine issue of material fact and, when construing the evidence in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). See, also, Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66. In a motion for summary judgment, the moving party bears the initial burden of demonstrating that there are no genuine issues of material facts *Page 4 
regarding an essential element of the nonmoving party's case.Dresher v. Burt (1996), 75 Ohio St.3d 280, 292.
 {¶ 12} The moving party must meet this burden by specifically referring to the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action," which affirmatively demonstrate that no material questions of fact remain. Civ.R. 56(C). Once the moving party has met its burden, the nonmoving party then has a corresponding burden to show that there remains a genuine issue of material fact. Dresher v. Burt, 75 Ohio St.3d at 293; see also, Civ.R. 56(E). The burdens borne by each party may not be met by mere allegations or conclusions, but must be supported by specific facts. Id.
 {¶ 13} In her third assignment of error, appellant argues that CPS wrongfully accepted the insurance check without her authorization or approval, and thus deprived her of her ability to negotiate with her insurer. In support, she points to her insurance policy, which states, "Loss or damage under this policy shall be paid, as interest may appear, to you and the loss payee shown in the Declarations or in this endorsement."
 {¶ 14} An insurance policy is a contract between the insurer and the insured. Ohayon v. Safeco Ins. Co. of Illinois (2001),91 Ohio St.3d 474, 478. Therefore, appellant's insurance policy grants her no rights vis-à-vis CPS. When CPS received the check from appellant's insurer, it was under no obligation to release appellant from the balance of the amount payable. Appellant's third assignment of error is not well-taken. *Page 5 
 {¶ 15} Because appellant's first and second assignments of error both involve similar issues in challenging the grant of summary judgment to Bellevue, we address them jointly. First, appellant points to the newspaper articles submitted in support of her motion in opposition to Bellevue's motion for summary judgment. The newspaper articles discuss the storm which precipitated the downed trees, and mentions Northview Street, where appellant's car was damaged. Appellant argues that the newspaper articles demonstrate Bellevue's actual knowledge of the "rotten" trees along her street. Second, appellant argues that the trial court erred in finding that liability only extends to vehicles on the regularly traveled portion of the road and does not extend to vehicles legally parked on the side of the street. Appellee, in its motion for summary judgment, responded that the tree was not under its control, but was private property, or alternatively, that the storm which caused the tree to fall was an "act of God," citing City of Piqua v. Morris (1918),98 Ohio St. 42, 49.[1]
 {¶ 16} Bellevue, a municipal corporation, has "the care, supervision, and control of the public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation. The liability or immunity from liability of a municipal corporation for injury, death, or loss to person or property allegedly caused by a failure to perform the responsibilities imposed by this section shall *Page 6 
be determined pursuant to divisions (A) and (B)(3) of section 2744.02 of the Revised Code." R.C. 723.01.
 {¶ 17} To determine whether a political subdivision, such as the city, enjoys immunity under R.C. Chapter 2744, courts employ a three-tiered analysis:
 {¶ 18} "The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. * * * However, that immunity is not absolute. * * *
 {¶ 19} "The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. * * *
 {¶ 20} "If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense to that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability."Colbert v. City of Cleveland, 99 Ohio St.3d 215, 2003-Ohio-3319, ¶ 7-9.
 {¶ 21} Clearly, keeping roads free from nuisance is a "governmental function." R.C. 2744.01(C)(2)(e),(j). Thus, Bellevue is entitled to immunity in the instant case. Next, the applicable exception to Bellevue's immunity, R.C. 2744.02(B)(3), imposes liability "for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads * * *." *Page 7 
 {¶ 22} The trial court acknowledged Harp v. Cleveland (2000),87 Ohio St.3d 506, which held that a municipality may be liable for damage caused by a tree falling onto the road, if the tree is a "nuisance" as considered by R.C. 2744.02(B)(3). While prior cases held that, in order for a municipality to be liable, the tree had to extend into or over the roadway, see Richards v. Rubicon Mill Condominium Assoc. (1995),100 Ohio App.3d 264, 268, Harp specifically held that a municipality may be liable when the tree threatens or endangers safety on the road.
 {¶ 23} "Clearly, an unsound tree limb that threatens to fall onto a public road from adjacent property can be a nuisance that makes the usual and ordinary course of travel on the roadway unsafe. Although not physically obstructing or impeding the flow or visibility of traffic, a tree limb threatening to fall upon a public road can be just as dangerous to the highway's safety as one that obstructs a driver's vision, obscures a stop sign, or hangs over the roadway low enough to strike traffic. * * *
 {¶ 24} "Accordingly, we hold that a political subdivision can be held liable under R.C. 2744.02(B)(3) for injuries that result when a tree limb falls upon a public road from adjacent land that is also within the political subdivision's control." Harp, 87 Ohio St.3d at 512.
 {¶ 25} However, Harp additionally requires a showing that the municipality had actual or constructive notice of the alleged nuisance before liability could be imposed. "There is constructive knowledge if `such nuisance existed in such a manner that it could or should have been discovered, that it existed for a sufficient length of time to have been *Page 8 
discovered, and that if it had been discovered it would have created a reasonable apprehension of a potential danger * * *.'" Id., citingFranks v. Lopez (1994), 69 Ohio St.3d 345, 349. The plaintiff inHarp avoided summary judgment by raising a genuine issue as to whether the municipality had constructive notice. A city forestry employee inspected the tree prior to the accident and marked it for priority pruning. The plaintiffs expert testified that the defect which caused the tree to fall would have been visible to the ground and the employee's inspection "should have revealed that the tree presented a danger to traffic" on the road. Id. at 513.
 {¶ 26} Appellant points again to the three newspaper articles submitted on summary judgment in support of her contention that Bellevue had notice that the tree was dangerous. The first article, from December 2000, discusses appellant's previous confrontation with the Bellevue council asking for help paying her insurance deductible when a storm "toppled three trees onto her property, smashing her Jeep Cherokee which was parked on the street." The second article, published October 15, 2003, is largely devoted to discussing an agreement between Bellevue and FirstEnergy to fund the removal of 75 to 80 old trees. It only referenced the prior storm insofar as it had caused trees to topple. It does not demonstrate that city officials had any knowledge, prior to the storm, that the trees posed a nuisance or hazard. The third article, dated December 18, 2003, further discusses the agreement between Bellevue and FirstEnergy, and the effect which the tree removals have on residents. Contrary to appellant's assertions, the only motivations prompting the removals discussed was the desire to avoid a power outage *Page 9 
from lines sagging into overgrown trees. It shows no knowledge of Bellevue officials of any danger posed by the trees prior to the storm.
 {¶ 27} Aside from the newspaper articles, appellant submitted her own affidavit in opposition to summary judgment. Her affidavit describes an encounter she had with an Ohio Edison foreman while restoring power after the storm; she alleges he told her that "Ohio Edison was angry over the ongoing controversy with the City of Bellevue occasioned by the City of Bellevue's failure to maintain old trees and remove same as needed." Again, this statement does not show any knowledge of Bellevue officials that the tree posed a nuisance to persons or property in the road as considered by Harp.
 {¶ 28} Moreover, if appellant is seeking to use the newspaper articles to prove that Bellevue officials had knowledge of the tree's condition, the articles would be inadmissible hearsay pursuant to Evid.R. 802. While newspaper articles are self-authenticating pursuant to Evid.R. 902(6), they are inadmissible if offered to prove the truth of a matter asserted in an out-of-court statement. "Newspaper articles are generally inadmissible as evidence of the facts stated within the article because they are hearsay not within any exception." State v. Self (1996),112 Ohio App.3d 688, 694.
 {¶ 29} Also, appellant's account of her conversation with the Ohio Edison foreman, if offered to prove the truth of the matter asserted, would be inadmissible hearsay. "`Only facts which would be admissible in evidence can be stated in affidavits and relied upon by the trial court when ruling upon a motion for summary judgment. Tokles Son, Inc. v.Midwestern Indemn. Co. (1992), 65 Ohio St.3d 621, 631, fn. 4. An *Page 10 
affidavit based on hearsay is not proper evidence of a genuine issue of material fact pursuant to Civ.R. 56(E)." Rigby v. Fallsway Equip. Co.,Inc., 150 Ohio App.3d 155, 165, 2002-Ohio-6120, ¶ 41. Since the foreman was not an agent of Bellevue, his statement, as recounted by appellant, would not fall within the exception of a statement against interest or a party admission, or within any of the exceptions listed in Evid.R. 803.
 {¶ 30} A trial court must consider only admissible evidence in reviewing a controversy to determine whether material facts are in dispute. Appellant, in responding to appellee's motion for summary judgment, was obliged to offer evidence of the type listed in Civ.R. 56(C). "The proper procedure for introducing evidentiary matter not specifically authorized by Civ.R. 56(C) is to incorporate it by reference in a properly framed affidavit pursuant to Civ.R. 56(E)."Biskupich v. Westbay Manor Nursing Home (1986), 33 Ohio App.3d 220, 222. However, a court may consider documents other than those listed in Civ.R. 56(C) if there is no objection; by failing to object, the trial court may deem any error waived. State ex rel. Cincinnati Enquirer v.Hamilton County Com'rs (April 26, 2002), 1st Dist. No. C-010605, 2002-Ohio-2038. If the trial court considered the otherwise inadmissible evidence in granting summary judgment, then the appellate court will also consider the evidence in its de novo review. Id, citing Murphy v.Reynoldsburg (1992), 65 Ohio St.3d 356, 360.
 {¶ 31} The judgment entry contains no indication whether the articles and the hearsay contained in appellant's affidavit were considered. Thus, we find that, even if *Page 11 
this type of evidence was acceptable (which it is not), appellant has not demonstrated that the tree was under Bellevue's control, nor has she demonstrated that the tree posed a danger to persons or property in the road before the storm. Even skimming over the causal issue of whether the tree itself was in such condition as to pose a danger without the storm or whether the storm caused the tree to fall, appellant is unable to raise a genuine issue of fact as to whether Bellevue had actual or constructive notice that the tree was a potential nuisance. Because we find summary judgment on these grounds proper, we decline to address the trial court's holding that nuisance liability pursuant to R.C.2744.02(B)(3) does not extend to cars legally parked on the side of the road. Accordingly, summary judgment for Bellevue was proper, and appellant's first and second assignments of error are not well-taken.
 {¶ 32} In her fourth assignment of error, appellant argues that the judgment should be void because Acting Judge Barry W. Bova lacked subject matter jurisdiction to hear the matter. Judge Kenneth P. Fox, the elected judge, entered an order dated January 6, 2006, appointing Bova as acting judge when Judge Fox is absent from the jurisdiction "for the purpose of attending judicial conferences, meetings, vacations, and any emergency that may result" in his absence. The record demonstrates that Judge Fox ruled on motions prior to summary judgment, and the record contains no explanation for why Acting Judge Bova ruled on the motions for summary judgment.
 {¶ 33} Appellant cites R.C. 1901.10(B) in support of her argument that only the Chief Justice of the Ohio Supreme Court may appoint an acting judge. She *Page 12 
acknowledges, however, that R.C. 1901.10(A)(2) provides Judge Fox with authority to appoint an acting judge when he is absent from the jurisdiction.
 {¶ 34} R.C. 1901.10(A)(2) provides:
 {¶ 35} "If a judge of a municipal court that has only one judge is temporarily absent, incapacitated, or otherwise unavailable, the judge may appoint a substitute who has the qualifications required by section1901.06 of the Revised Code or a retired judge of a court of record who is a qualified elector and a resident of the territory of the court. If the judge is unable to make the appointment, the chief justice of the supreme court shall appoint a substitute. The appointee shall serve during the absence, incapacity, or unavailability of the incumbent, shall have the jurisdiction and powers conferred upon the judge of the municipal court, and shall be styled `acting judge.' During that time of service, the acting judge shall sign all process and records and shall perform all acts pertaining to the office, except that of removal and appointment of officers of the court. All courts shall take judicial notice of the selection and powers of the acting judge. * * *."
 {¶ 36} R.C. 1901.10(B) provides:
 {¶ 37} "(B) When the volume of cases pending in any municipal court necessitates an additional judge, the chief justice of the supreme court, upon the written request of the judge or presiding judge of that municipal court, may designate a judge of another municipal court or county court to serve for any period of time that the chief justice may prescribe. * * *." *Page 13 
 {¶ 38} Appellee notes that appellant did not enter any objection below, and thus waived this argument on appeal. Further, nothing in the record indicates whether Judge Fox was absent from the jurisdiction or otherwise incapacitated. Clearly, the statute provides for appointment by the chief justice when the volume of cases necessitates another judge or when the elected judge is unable to select an appointee.
 {¶ 39} Appellee also cites Huffman v. Shaffer (1984),13 Ohio App.3d 291, for the proposition that irregularity in the appointment of a judge does not necessarily render the judgment void. In Huffman, the chief justice appointed an acting judge with the appointment set to expire on March 31, 1976. The appellant challenged a judgment rendered by the acting judge on April 13, 1983. The court held that "the law is well-settled that where the record shows some color of title to appointment as substitute, and he was a de facto acting municipal judge, and the judgment, if any, entered by him, is not now open to attack on that ground." Id. at 292 (internal citations omitted).
 {¶ 40} Huffman relied in part on Demereaux v. State (1930),35 Ohio App. 418. Demereaux involved a challenge to an acting judge's authority when the record showed no indication of who appointed the acting judge. The General Code section then in effect provided for the appointment of an acting judge by the elected judge when temporarily absent or incapacitated, or by the mayor if the judge was unable to appoint. Considering the silent record on the matter, the court held, "as much as we deprecate the irregular way in which the substitute for the regularly elected judge assumed the functions of the judge in this case, the record shows some color of title to appointment as substitute, and he was *Page 14 
a de facto acting municipal judge, and the judgment, if any, entered by him, is not now open to attack on that ground. Stiess v. State [1921],103 Ohio St. 33, 132 N. E. 85." Id. at 422.
 {¶ 41} Similarly, the record in the instant matter contains some "color of title" for Acting Judge Bova's appointment and his authority to rule on the motions for summary judgment. The record is silent as to the circumstances surrounding Judge Fox's absence. Appellant has neither demonstrated nor alleged prejudice from the appointment. Therefore, appellant's fourth assignment of error is not well-taken.
 {¶ 42} For the foregoing reasons, the judgment of the Municipal Court of Bellevue is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Sandusky County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Arlene Singer, J., William J. Skow, J. CONCUR.
[1] In its motion for summary judgment and in its appellate brief, appellee references a deposition of appellant. No deposition was filed in the record below. We therefore disregard the references. When ruling on a motion for summary judgment a court may consider only "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action." (Emphasis added.) See Civ.R. 56(C). *Page 1